UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PANKAJ MERCHIA,<br><br>             Defendant | Criminal No.    22cr10355<br><br>Violations:<br><br>Count One: Health Care Fraud<br>(18 U.S.C. § 1347)<br><br>Counts Two-Four: Money Laundering<br>(18 U.S.C. § 1957)<br><br>Health Care Fraud Forfeiture Allegation:<br>(18 U.S.C. § 982(A)(7))<br><br>Money Laundering Forfeiture Allegation:<br>(18 U.S.C. § 982(A)(1)) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.      Pankaj MERCHIA, M.D. ("MERCHIA") was a sleep medicine physician licensed in Massachusetts, Florida, and/or Virginia.  MERCHIA controlled, owned, and/or operated numerous sleep medicine entities, including Sleepheart of Virginia, LLC; Sleepheart of Maryland, LLC; Sleepheart of Massachusetts, LLC; CPAP Clinical Services, LLC; and CPAP Concierge, LLC.  Pankaj MERCHIA also controlled, owned, and/or operated Standard Medical Billing, an entity through which Pankaj MERCHIA handled billing for his sleep medicine entities.  Although nominal ownership for these various companies changed over time, Pankaj MERCHIA was, at all relevant times, the sole controlling agent for all of these entities.

1

COUNT ONE
Health Care Fraud
(18 U.S.C. § 1347)

General Health Care Fraud Allegations

2.      Family Member 1 is an immediate family member of Pankaj MERCHIA.  At all times relevant to the indictment, Family Member 1 was a resident of Massachusetts.

3.      Family Member 1 was, at all times relevant to this Indictment, a subscriber in a health insurance plan managed by Health Insurer 1.  Health Insurer 1 was registered, and had its principal place of business, in Massachusetts.

4.      Health Insurer 1 was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it was a health plan affecting commerce, under which medical benefits, items, and services were provided to individuals, and included individuals and entities who were providing medical benefits, items, and services for which payment could be made under the plan.

5.      When submitting claims to Health Insurer 1, physicians utilized the Healthcare Common Procedure Coding System ("HCPCS").  HCPCS codes were developed by the Centers for Medicare & Medicaid Services ("CMS"), an agency within the United States Department of Health and Human Services, as a standard method for reporting medical procedures and services. When submitting bills to health care benefit programs, health care providers or persons billing on their behalf had to identify the proper HCPCS codes that corresponded to the services they provided.

6.      From in or about January 2013 through in or about December 2019, MERCHIA devised and executed a scheme to defraud a health care benefit program by billing for services for

2

Family Member 1 in violation of express exclusions provided by Health Insurer 1. The purpose of the scheme was for MERCHIA to unlawfully enrich himself by submitting false and fraudulent claims to insurers for payment for medical services provided to an immediate family member notwithstanding this exclusion. To carry out this scheme, MERCHIA misrepresented and obscured his involvement in Family Member 1's care by submitting claims through various business entities instead of his own name, and then making false representations about his affiliation with these entities. As a result of these misrepresentations, MERCHIA received over $400,000 in total payments from Health Insurer 1 for a single continuous positive airway pressure ("CPAP") machine for Family Member 1.

7.      On or about May 23, 2013, MERCHIA was notified by federal investigators that he was not permitted to bill insurance for medical services and/or durable medical equipment provided to family members.

8.      Notwithstanding this notice, between in or about January 2013 and in or about June 2017, MERCHIA personally billed Health Insurer 1 a total of approximately $34,000 for a CPAP machine purportedly provided to Family Member 1. To bill these claims, MERCHIA utilized HCPCS codes E0470 (respiratory assist device, bi-level pressure capability, without backup rate feature, used with noninvasive interface, e.g., nasal or facial mask (intermittent assist device with continuous positive airway pressure device), A9279 (respiratory assist device, bi-level pressure capability, without backup rate feature, used with noninvasive interface, e.g., nasal or facial mask (intermittent assist device with continuous positive airway pressure device), and E0562 (respiratory assist device, bi-level pressure capability, without backup rate feature, used with

noninvasive interface, e.g., nasal or facial mask (intermittent assist device with continuous positive airway pressure device)).

9.      Between in or about 2013 and in or about June 2017, MERCHIA billed between approximately $700 and $1,495.19 per month for HCPCS code E0470; approximately $262.68 per month for HCPCS code A9279; and between $257.63 and $291.97 per month for HCPCS code E0562.

10.     Health Insurer 1 paid approximately $1,134.83 to MERCHIA for these claims between in or about 2013 and approximately in or about June 2017.  The large majority of MERCHIA's claims to Health Insurer 1 for Family Member 1's treatment during this period were denied.

11.     Beginning in or about July 2017, MERCHIA began billing Health Insurer 1 for Family Member 1's CPAP machine through CPAP Clinical Services, LLC ("CPAP Clinical") a medical company controlled and operated by Pankaj MERCHIA.  Between in or about July 2017 and in or about November 2017, Pankaj MERCHIA billed a total of approximately $6,723.95 for the CPAP provided to Family Member 1.  For these CPAP Clinical Services bills, Pankaj MERCHIA continued to bill approximately $790.14 for HCPCS code E0470, $262.68 for HCPCS code A9279, and $291.97 for HCPCS code E0562 each month.

12.     On or about January 24, 2017 and on or about August 15, 2017, Health Insurer 1 made two payments to CPAP Clinical totaling $9,139.22 for the CPAP machine provided to Family Member 1.

13.     In or about November 2017, Health Insurer 1 notified MERCHIA that Health Insurer 1 would not cover these claims for services provided to Family Member 1 because of the

4

family member exclusion, and sought to recoup the $9,139.22 payment from Pankaj MERCHIA. MERCHIA repaid approximately $3,685 of this payment. Between in or about January and July 2018, Health Insurer 1 mailed several letters to CPAP Clinical Services requesting the remaining balance. On or about July 6, 2018, Health Insurer 1 emailed Standard Medical Billing again requesting a refund for the services that were provided to Family Member 1 on the grounds that "[Health Insurer 1] does not reimburse contracted providers for treatment or service rendered to immediate family members."

14. On or about August 29, 2018, MERCHIA directed an employee to respond, via email, to Health Insurer 1 that "Dr. Merchia does not own CPAP ClinicalServices, LLC." However, MERCHIA was in fact the sole controlling agent of CPAP Clinical, and, in any event, was the physician actually providing services to Family Member 1, which were being billed through CPAP Clinical Services. In addition, CPAP Clinical's receipts were deposited into bank accounts held by MERCHIA.

15. After receiving Health Insurer 1's November 2017 notice, MERCHIA did not submit any bills to Health Insurer 1 for Family Member 1 until in or about January and February 2019. MERCHIA thereafter submitted numerous bills in a single batch for Family Member 1's CPAP Machine. These bills were backdated as far back as in or about December 2017. These new bills were submitting under the name of another entity operated and controlled by Pankaj MERCHIA: CPAP Concierge, LLC ("CPAP Concierge").

16. Through CPAP Concierge, MERCHIA billed significantly more per month for Family Member 1's CPAP than he had before. Using the same HCPCS codes as before, Pankaj MERCHIA billed: between $19,001.36 and $42,037.37 for HCPCS code E0470, between

$6,500.01 and $19,999.00 for HCPCS code A9279, and between $5,500.58 and $22,686.58 for HCPCS code E0562.  As a result of these inflated billing figures, for the bills backdated between in or about December 2017 and in or about February 2019, MERCHIA (through CPAP Concierge) billed Health Insurer 1 a total of over $1,820,605 for the CPAP device provided to Family Member 1.

17.     Although Health Insurer 1 did not pay all of these claims, on or about March 12, 2019, Health Insurer 1 did pay CPAP Concierge approximately $390,108.19 for the claims submitted for in or about December 2017 through in or about February 2019 for Family Member 1's CPAP machine.  At the time Health Insurer 1 paid these claims, Health Insurer 1 had not yet determined that MERCHIA controlled CPAP Concierge.

18.     By April 9, 2019, Health Insurer 1 had determined that MERCHIA controlled CPAP Concierge and was still billing for Family Member 1's treatment despite previously notifying MERCHIA of the family member exclusion.  Consequently, on or about that date, Health Insurer 1 sent a letter to CPAP Concierge requesting medical records that would support the charges.  MERCHIA responded on CPAP Concierge's behalf, sending an email to Health Insurer 1 on May 9, 2019, confirming receipt of the letter.  Nevertheless, MERCHIA never provided medical records to Health Insurer 1 and ignored repeated requests for the same.

19.     On October 23, 2019, Health Insurer 1 sent another letter to MERCHIA demanding repayment of the over $390,000 sent to CPAP Concierge because MERCHIA had failed to provide Health Insurer 1 with the requested documentation and had billed Health Insurer 1 in violation of the family member exclusion.  On November 22, 2019, MERCHIA responded to Health Insurer 1

and denied ownership of CPAP Clinical or CPAP Concierge.  To date, Pankaj MERCHIA has failed to refund any of the approximately $390,000 to Health Insurer 1.

20.    MERCHIA's claims to Health Insurer 1 for CPAP-related services for Family Member 1 were false because MERCHIA misled Health Insurer 1 into paying claims by obscuring his familial relationship to Family Member 1 through the use of several corporate entities, and then misrepresented his control over these entities in order to circumvent the family member exclusion.

The Grand Jury charges:

21.    From in or about January 2013 and continuing until in or about February 2019, in the District of Massachusetts and elsewhere, the defendant,

PANKAJ MERCHIA,

knowingly executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of these health care benefit plans, by means of materially false and fraudulent pretenses, representations, and promises, by submitting, willfully causing the submission, and aiding and abetting in the submission of materially false and fraudulent claims for services; to wit, by submitting claims for an immediate family member while denying and obscuring the treatment relationship between himself and the family member.

All in violation of Title 18, United States Code, Section 1347.

7

COUNT TWO
Money Laundering
(18 U.S.C. § 1957)

General Money Laundering Allegations

22.     In addition to fraudulently billing Health Insurer 1 for CPAP-related services for Family Member 1, MERCHIA fraudulently billed other health care benefit programs for CPAP-related services for other patients, including:

    a.  Patient 1 was a patient of MERCHIA in or about 2009 and in or about 2010. Despite the fact that MERCHIA had not treated or seen Patient 1 since in or about 2010, he nevertheless billed Patient 1's new insurance carrier, Health Insurer 2, for sleep-related services and devices in 2016-2018.  As a result of these fraudulent claims, Pankaj MERCHIA received over $193,000 in payment from Health Insurer 2.

    b.  Patient 2 a was a patient of Pankaj MERCHIA in approximately 2009 and received a bilevel positive airway pressure machine (BiPAP) in 2009.  Despite returning the BiPAP machine to Pankaj MERCHIA's office at some point before 2016, Pankaj MERCHIA nevertheless billed Health Insurer 3 for BiPaP-related claims in or about 2016 and in or about 2017.  As a result of these claims, Pankaj MERCHIA received $176,509.59 from Health Insurer 3.

23.     Health Insurer 2 and Health Insurer 3 were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b), in that they were health plans affecting commerce, under which medical benefits, items, and services were provided to individuals, and

8

included individuals and entities who were providing medical benefits, items, and services for which payment could be made under the plans.

24.      On or about December 15, 2017, MERCHIA used funds obtained from Health Insurer 2 and Health Insurer 3 to fund the purchase of a property located at 617 Boylston Street, Brookline, Massachusetts.  This property was purchased with a wire transfer of approximately $2,049,010.86.

The Grand Jury further charges:

25.      The Grand Jury re-alleges and incorporates by reference paragraphs 1-24 of this Indictment.

26.      On or about December 15, 2017, in Brookline, in the District of Massachusetts, and elsewhere, the defendant,

PANKAJ MERCHIA,

knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, that is, the wire transfer of approximately $2,049,010.86, where such property was derived from specified unlawful activity, that is, health care fraud in violation of Title 18, United States Code, Section 1347 and as set forth in paragraphs 22-23.

All in violation of Title 18, United States Code, Section 1957.

COUNT THREE
Money Laundering
(18 U.S.C. § 1957)

Additional Money Laundering Allegations

27.    In addition to the transactions described above, MERCHIA executed a series of financial transactions with the proceeds of the fraud alleged in Count One.

28.    In particular, on or about April 18, 2019, MERCHIA transferred $250,000 from an account in the name of Tribase, LLC at Capital One Bank to a second Capital One account in the name of Sleepheart of Virginia, LLC.  MERCHIA controlled both accounts.

29.    In addition, on or about May 21, 2019, MERCHIA used $325,000 held in an account in the name of Tribase, LLC at TD Ameritrade to purchase Federated Treasury Obligated Funds held in the same account.  Of the $325,000, at least approximately $140,933 was directly traceable to proceeds of the fraud alleged in Count One.

The Grand Jury further charges:

30.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-29 of this Indictment.

31.    On or about April 18, 2019, in Brookline, in the District of Massachusetts, and elsewhere, the defendant,

PANKAJ MERCHIA,

knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, that is, an electronic transfer in the amount of approximately $250,000, where such property was derived from specified unlawful activity, that is, health care fraud in violation of Title

10

18, United States Code, Section 1347 as charged in Count One and as set forth in paragraphs 22-23.

All in violation of Title 18, United States Code, Section 1957.

COUNT FOUR
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

32.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-31 of this Indictment.

33.     On or about May 21, 2019, in Brookline, in the District of Massachusetts, and elsewhere, the defendant,

PANKAJ MERCHIA,

knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, that is, the purchase of Federated Treasury Obligated Funds in the amount of approximately $140,933.00, where such property was derived from specified unlawful activity, that is, health care fraud in violation of Title 18, United States Code, Section 1347 as charged in Count One and as set forth in paragraphs 22-23.

All in violation of Title 18, United States Code, Section 1957.

## HEALTH CARE FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(7))

The Grand Jury further finds:

34.     Upon conviction of the offense in violation of Title 18, United States Code, Section 1347, set forth in Count One, the defendant,

PANKAJ MERCHIA,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.  The property to be forfeited includes, but is not limited to, the following:

      a.  the real property located at 617 Boylston Street, Brookline, Massachusetts, 02445

35.     If any of the property described in Paragraph 34, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(7), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the Court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property

of the defendant up to the value of the property described in Paragraph 34 above.

All pursuant to Title 18, United States Code, Section 982(a)(7).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

The Grand Jury further finds:

36.     Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1957, set forth in Counts Two through Four, the defendant,

PANKAJ MERCHIA,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

  a.   the real property located at 617 Boylston Street, Brookline, Massachusetts, 02445

37.     If any of the property described in Paragraph 36, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

  a.   cannot be located upon the exercise of due diligence;

  b.   has been transferred or sold to, or deposited with, a third party;

  c.   has been placed beyond the jurisdiction of the Court;

  d.   has been substantially diminished in value; or

  e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 36 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

_____
FOREPERSON

_____
EVAN PANICH
LAUREN GRABER
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: DECEMBER __15__, 2022
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

16