**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA

    v.　　　　　　　　　　　　　　Criminal No. 22-10355-NMG

PANKAJ MERCHIA

**EMERGENCY DEFENDANT PANKAJ MERCHIA'S MOTION TO STRIKE TESTIMONY AND EXCLUDE EVIDENCE RELATING TO JENNIFER MALARA FROM JURY CONSIDERATION**

Defendant Dr. **Pankaj Merchia**, pro se despite requesting assistance of counsel and not waiving his right to counsel, respectfully moves this Court for an order: (1) **striking** the testimony of **Jennifer Malara** and **excluding** from jury consideration all testimony, exhibits, and references relating to Ms. Malara; (2) issuing a **curative instruction** directing the jury that Ms. Malara's testimony and any Malara-related materials are **not evidence** and must not be considered for any purpose; and (3) precluding the Government from referencing Ms. Malara in closing argument.

**I. INTRODUCTION**

The Government called Jennifer Malara to testify. Her testimony (and associated exhibits/references) concerned allegations about medical diagnosis and treatment—specifically, an asserted "misdiagnosis" of OSA.

But Ms. Malara is **not a patient/victim identified in the Superseding Indictment**, and her allegations do not prove any element of the charged offenses. The Superseding Indictment's health-care-fraud charge is premised on a scheme to obtain insurer payments by **submitting claims for an immediate family member while obscuring the family-member relationship and the defendant's involvement**, not on a theory of malpractice or misdiagnosis.

The money-laundering allegations reference proceeds tied to other alleged billing involving anonymized "Patient 1" and "Patient 2," not Ms. Malara.

Because the Malara evidence is **irrelevant** (Fed. R. Evid. 401–402), unfairly **prejudicial and confusing** (Fed. R. Evid. 403), and invites conviction based on uncharged "bad doctor" propensity reasoning (Fed. R. Evid. 404), the Court should **strike** it and direct the jury to **disregard** it entirely.

Further, Ms. Malara's "misdiagnosis" allegation was directly contradicted by a letter from a **Virginia Board of Medicine sleep-medicine expert** concluding she had OSA and was not misdiagnosed.

## II. RELEVANT CHARGES AND LIMITS OF THE INDICTMENT

The Superseding Indictment alleges a health-care-fraud scheme involving billing for an immediate family member despite an exclusion and misrepresentations designed to obscure the treatment relationship and obtain insurer payments.

The Indictment describes that the alleged purpose was to obtain insurer payment for services/items provided to the family member notwithstanding an exclusion, including substantial payments for a CPAP device.

The Indictment's money-laundering allegations further reference claims involving other anonymized patients—"Patient 1" and "Patient 2"—and alleged payments from other insurers tied to CPAP-related billing for those patients.

Nothing in these charged theories turns on whether Ms. Malara subjectively believes she was "misdiagnosed," nor whether a jury should adjudicate a malpractice-like dispute about OSA diagnosis.

## III. LEGAL STANDARD

1. **Relevance (Rules 401–402).** Evidence must have any tendency to make a fact of consequence more or less probable. Irrelevant evidence is inadmissible.

2. **Unfair prejudice and confusion (Rule 403).** Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or waste of time.

3. **Other-acts/propensity concerns (Rule 404).** Evidence offered to show that a defendant acted "in accordance with" a supposed character trait—e.g., that he is a "bad doctor"—is not admissible to prove guilt of the charged crimes.

4. **Curative action after testimony.** When inadmissible or unfairly prejudicial testimony reaches the jury, the Court may **strike** it, exclude related exhibits, and issue a curative instruction directing the jury to disregard it (and may also bar its use in closing).

## IV. ARGUMENT

**A. Malara testimony and exhibits are irrelevant to any element of the charged offenses and should be stricken.**

The Superseding Indictment's health-care-fraud allegation is not framed as a misdiagnosis case. It alleges false/fraudulent claims designed to obtain insurer payments by concealing the immediate-family-member relationship and the defendant's involvement in that family member's care.

Similarly, the money-laundering allegations reference proceeds tied to alleged fraudulent billing involving anonymized "Patient 1" and "Patient 2," with specific insurer-payment allegations for those patients.

Ms. Malara is not alleged in the Indictment to be Family Member 1, Patient 1, or Patient 2, and (as the defense understands the trial record) the Government has not shown that any insurer paid Dr. Merchia for goods or services provided to Ms. Malara, or that any charged financial transaction involved proceeds traceable to Ms. Malara. As a result, Malara testimony does not make any charged fact "more or less probable" and should be excluded under Rules 401–402.

Because Ms. Malara already testified, the appropriate remedy is to **strike** her testimony and instruct the jury that it must be disregarded entirely.

**B. Any marginal probative value is substantially outweighed by unfair prejudice, confusion of issues, and misleading the jury (Rule 403).**

Even assuming arguendo that Ms. Malara's testimony has some marginal relevance, it presents precisely the dangers Rule 403 is designed to prevent:

- It invites the jury to decide whether Dr. Merchia provided good or bad medical care, rather than whether the Government proved the charged billing/insurance fraud and laundering elements.

- It risks a verdict based on emotion, outrage, or generalized "bad doctor" reasoning.

- It consumes trial time on collateral issues (clinical diagnosis disputes) not charged in the Indictment.

This is especially acute where the testimony centers on a claim of "misdiagnosis" that is collateral to the Indictment's alleged billing-fraud mechanism (concealment of family-member relationship and related misrepresentations).

**C. Malara testimony functions as improper propensity evidence (Rule 404) and risks broadening the indictment in front of the jury.**

Ms. Malara's testimony effectively encourages the jury to infer: because Dr. Merchia allegedly misdiagnosed Ms. Malara, he must have acted fraudulently in the charged conduct. That is classic propensity reasoning forbidden by Rule 404.

Worse, introducing uncharged and disputed allegations about Ms. Malara risks shifting the jury's focus from the charged scheme described in the Superseding Indictment to an uncharged theory—i.e., alleged improper medical practice generally—creating a serious risk the jury convicts on an improper basis rather than on the charged facts and elements.

**D. The "misdiagnosis" allegation is contradicted by a Virginia Board of Medicine sleep-medicine expert letter, making the testimony misleading and amplifying Rule 403 prejudice.**

The Government, defense, and court possess a letter from a **Virginia Board of Medicine sleep-medicine expert** concluding that Ms. Malara had OSA and was **not misdiagnosed** with OSA. The existence of this official expert assessment underscores that the "misdiagnosis" narrative is at minimum contested and that allowing the jury to rely on Malara's allegation (without correction) is misleading and unfairly prejudicial.

Accordingly, the Court should strike the Malara testimony in full.

**V. REQUESTED RELIEF**

Dr. Merchia respectfully requests that the Court:

1. **STRIKE** the testimony of Jennifer Malara and **EXCLUDE** from jury consideration all testimony, exhibits, demonstratives, summaries, and references relating to Jennifer Malara;

2. Order that any Malara-related exhibits that were marked and/or admitted be **withdrawn**, not provided to the jury during deliberations, and not referenced in closing;

3. Provide a **curative instruction** substantially as follows (or similar):

"You have heard testimony and/or seen references concerning Jennifer Malara. That testimony and any related materials are stricken. You must disregard them entirely. They are not evidence and must play no role in your deliberations."

4. Preclude the Government from referencing Ms. Malara or her allegations in opening/closing or otherwise suggesting the jury may consider her testimony for any purpose.

**In the alternative**, if the Court declines to strike/exclude the Malara evidence in full, Dr. Merchia requests that the Court:

5. **Receive** the Virginia Board of Medicine sleep-medicine expert letter (attached as Exhibit A) at minimum as an **offer of proof** under Fed. R. Evid. 103(a)(2) to preserve the record; and

6. **Admit** Exhibit A as rebuttal evidence (and permit the defense to publish it appropriately), including under applicable hearsay exceptions such as Fed. R. Evid. 803(8) (public records; factual findings from a legally authorized investigation offered against the Government in a criminal case), and/or other applicable bases, to prevent the jury from being misled.

## VI. CONCLUSION

For the foregoing reasons, Dr. Merchia respectfully requests that the Court strike Ms. Malara's testimony, exclude all Malara-related exhibits and references from the jury's consideration, and issue an immediate curative instruction; and in the alternative, receive/admit the Virginia Board of Medicine sleep-medicine expert letter as rebuttal or at least as an offer of proof.

Respectfully submitted,

/s Pankaj Merchia, MD


## CERTIFICATE OF SERVICE

Upon docketing, this shall be served on all parties.

/s Pankaj Merchia, MD